UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

AUTOMATED RECOVERY                                            Case No. 22-10225
SYSTEMS OF NEW MEXICO, INC.,

    Debtor.

MITCHELL AND VICTORIA HAWKES,

    Plaintiffs,

v.                                                             Adv. No. 22-1018

AUTOMATED RECOVERY
SYSTEMS OF NEW MEXICO, INC.,
SAN JUAN REGIONAL MEDICAL
CENTER, INC., and SAN JUAN
HEALTH PARTNERS INC.,

    Defendants.

## OPINION

Plaintiffs moved the Court to "revisit" two conclusions reached in the Court's opinion and order denying Plaintiffs' motion to abstain and/or remand. The Court will deny the motion, except that the Court will make additional findings relating to the supplemental jurisdiction issue, discussed below.

A.    Facts.[1]

For the purpose of ruling on the motion, the Court finds:[2]

---

[1] The Court takes judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

[2] Some of the Court's findings are in the discussion portion of the opinion. They are incorporated by this reference.

On January 21, 2022, plaintiffs Mitchell and Victoria Hawkes ("Plaintiffs"), on behalf of themselves and others similarly situated, filed a class action complaint against San Juan Regional Medical Center, Inc., San Juan Health Partners, Inc. (together, the "San Juan Defendants") and Automated Recovery Systems of New Mexico, Inc. ("Debtor"). The complaint initiated civil action No. D-1116-CV-2021-00513 in the Eleventh Judicial District Court, State of New Mexico.

The complaint is set out in pages 11-20 of Plaintiffs' motion for abstention and remand. All allegations in the complaint are incorporated by reference, including the following paraphrased allegations:

- Debtor and the San Juan Defendants are together referred to as the "Defendants." (e.g., ¶ 9 et seq.).
- Defendants operated a partnership, joint venture and/or joint enterprise . . . They shared a community of interest with the object or purpose of collecting medical debt through lawsuits in New Mexico Courts. . . they shared control over common business activities . . . they share management and employees . . . and they share profits and losses (¶ 11).
- Defendants operated as each other's employees, agents, apparent agents, or contractors, and acted within the scope of their employment, agency, apparent agency, or contract when engaging in the conduct described herein. Defendants are vicariously liable for each other's actions. (¶ 12).
- Defendants participated in, authorized, aided and abetted, and/or ratified the misconduct described herein. (¶13).
- SJRMC[3] and SJHP[4] hired ARS[5] to collect on their behalf . . . Under the terms of their agreement, ARS was entitled to collect a "commission" - in other words, a contingent fee - if it was able to collect from Mr. and Mrs. Hawkes . . . The agreement specifically stated that ARS planned to conduct litigation in its own name to collect the debt. . . . SJRMC and SJHP did not sell the debt to ARS. . . . SJRMC and SJHP remained the parties entitled to payment of the debt. . . . SJRMC, SJHP, and ARS knew that their conduct was illegal. . . . Although Defendants' agreement was essentially an employment agreement for ARS, it was disguised as an "assignment" in an effort to evade New Mexico law. (¶¶ 30-36).
- ARS has engaged in the unauthorized practice of law in hundreds of lawsuits. SJRMC and SJHP received the proceeds of numerous illegal judgments obtained by ARS. (¶¶ 42-43).
- The common questions include: whether ARS engaged in the unauthorized

---

[3] San Juan Regional Medical Center.
[4] San Juan Health Partners.
[5] The Debtor.

practice of law as defined by New Mexico law; whether Defendants' conduct violated the UPA; whether ARS's unauthorized practice of law violated New Mexico law in other ways; whether class members are entitled to damages or other relief; and whether ARS's lawsuits are void or it would otherwise be inequitable for Defendants to retain or collect amounts reduced to judgments. (¶47)

- WHEREFORE, Plaintiffs pray that the court: certify this case as a class action and appoint counsel below to represent the class; award actual, statutory, and punitive damages as set forth above; find Defendants to be jointly and severally liable; award declaratory and injunctive relief; award reasonable attorney fees and costs; and grant such further relief that is just and reasonable under the circumstances. (Prayer for Relief).

The claims asserted against Debtor's estate are referred to as the "Debtor Claims." The claims asserted against the San Juan Defendants are referred to as the "San Juan Claims."

If Plaintiffs were awarded all requested relief, Debtor's valuable asset (about 1,500 collection judgments against multiple debtors, scheduled at $10,000,000) would be worthless, and the Defendants would owe a lot of money to Plaintiffs and the class claimants.

Debtor moved to dismiss the complaint, arguing that its actions and procedures were entirely lawful and in accordance with a New Mexico statute and a rule of civil procedure for the New Mexico magistrate courts, where all of the judgments were obtained.

On November 3, 2021, the state court judge denied the motion to dismiss. Debtor filed this chapter 11 case on March 23, 2022.

On May 16, 2022, Plaintiffs filed a motion to apply Bankruptcy Rule[6] 7023 to the claims allowance process, to set a schedule for certifying class claims, and for an extension of time to file an individual and/or class proof of claim (the "Class Claim Motion"). The Court entered a stipulated order on June 6, 2022, which, inter alia, vacated the bar date for the Plaintiffs and other potential class members and held that Bankruptcy Rule 7023 would apply to class proofs of claim.

---

[6] A "Bankruptcy Rule" refers to the Federal Rules of Bankruptcy Procedure, and a "Rule" refers to the Federal Rules of Civil Procedure.

The parties mediated their disputes on July 28, 2022. No settlement was reached.

Plaintiffs withdrew the Class Claim Motion on August 17, 2022. Twelve days later, Debtor removed the state court action this proceeding to the district court, commencing this adversary proceeding. The district court referred the proceeding to this Court. Plaintiffs filed the motion for abstention and remand on September 12, 2022, asking the Court to abstain from hearing the proceeding and to remand it to state court. Defendants opposed the motion. On November 22, 2022, the Court denied the motion. Plaintiffs filed the motion for reconsideration on December 6, 2022.

B.   The Order Denying the Motion to Abstain and Remand is Interlocutory.

The Court's order denying Plaintiffs' motion to abstain and remand is interlocutory. *See, e.g., In re Denton*, 236 B.R. 418, 419 (10th Cir. BAP. 1999) ("an interlocutory order denying a motion to remand or to abstain is appealable as a matter of discretion pursuant to 28 U.S.C. § 158(a)(3)").

Under Rule 54(b), an order adjudicating fewer than all claims of all parties "may be reviewed at any time before entry of a judgment . . ." The rule applies to reconsideration of interlocutory orders. *See, e.g., C & A Const. Co. v. DHC Dev.*, 501 Fed. App'x 763, 779 (10th Cir. 2012) (applying Rule 54(b) to the district court's interlocutory order); *Raytheon Constructors, Inc. v. ASARCO, Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003) (Rule 54, not Rule 60, provides the basis for reconsidering an interlocutory order); *Trujillo v. Board of Educ. of Albuquerque Public Schools*, 212 Fed. App'x 760, 765 (10th Cir. 2007) (unpublished) (same). "[I]nterlocutory orders are not subject to the law of the case doctrine and may always be reconsidered prior to final adjudication." *Filebark v. U.S. Dept. of Transp.,* 555 F.3d 1009, 1013 (D.C. Cir. 2009), *cert. denied*, 558 U.S. 1007 (2009) (quoting *Langevine v. District of Columbia,*

106 F.3d 1018, 1023 (D.C. Cir. 1997)). "District courts generally remain free to reconsider their earlier interlocutory orders." *Naylor Farms, Inc. v. Anadarko OGC Co.,* 2011 WL 7053794, at *1 (W.D. Okla. 2011) (citing *Rimbert v. Eli Lilly and Co.,* 647 F.3d 1247, 1251 (10th Cir. 2011)). The Court may reconsider its interlocutory order denying Plaintiffs' motion to abstain and remand.

Tenth Circuit courts may rely on their general discretionary authority to reconsider interlocutory orders, as justice requires. *See, e.g., Friedman v. Dollar Thrifty Automotive Group, Inc.,* 2015 WL 8479746, at *2 (D. Colo. 2015) ("In deciding a motion to reconsider an interlocutory order, the court is not bound by the stricter standards for considering a Rule 59(e) or 60(b) motion. . . . Instead, a court has plenary power to revisit and amend interlocutory orders as justice requires."); *Trujillo v. Board of Educ. of the Albuquerque Public Schools*, 470 F. Supp. 2d 1270, 1275 (D.N.M. 2005), *aff'd and remanded*, 212 Fed. App'x 760 (10th Cir. 2007) (applying the discretionary standard and determining that it was in the interests of justice to grant a motion to reconsider in part); *Dombos v. Janecka,* 2012 WL 1372258, at *3 (D.N.M.) ("Notably, neither rule 59 nor rule 60 apply to interlocutory orders a district court reconsiders before entry of final judgment.").

C. <u>The Debtor Claims are Core</u>.

Plaintiffs ask the Court to reconsider the ruling that the Debtor Claims are core.[7] Plaintiffs point to the following statement in *In re Gardner*, 913 F.2d 1515 (10th Cir. 1990):

> Bankruptcy courts have jurisdiction over core proceedings. *See* 28 U.S.C. § 157. Core proceedings are proceedings which have no existence outside of bankruptcy. *In re Alexander,* 49 B.R. 733, 736 (Bankr. D.N.D. 1985). *Actions which do not*

---

[7] For the mandatory abstention doctrine to apply, the proceeding must be, inter alia, "non-core." *See Hernandez v. Lasalle Bank, N.A.* (*In re Hernandez*), 2010 WL 5155011, at *4 (Bankr. D.N.M. 2010), citing *In re Mobile Tool Int'l*, 320 B.R. 552, 556 (Bankr. D. Del. 2005), and *In re Gregory Rock House Ranch, LLC,* 339 B.R. 249, 253 (Bankr. D.N.M. 2006).

> *depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings. In re Wood,* 825 F.2d 90, 96 (5th Cir. 1987).

913 F.2d at 1517-18 (italics added).

*Gardner* is consistent with the Court's ruling. Bankruptcy court jurisdiction is derived from § 1334(a), (b), and (e).[8] Section 1334(a) gives bankruptcy court exclusive jurisdiction over bankruptcy petitions, *In re Affirmative Ins. Holdings, Inc.*, 565 B.R. 566, 580 (Bankr. D. Del. 2017), while § 1334(e) gives bankruptcy courts exclusive jurisdiction over property of the estate. *In re Ames Dept. Stores, Inc.*, 542 B.R. 121, 134 (Bankr. S.D.N.Y. 2015). Section 1334(b) gives district courts original but not exclusive jurisdiction over civil proceedings arising under title 11, or arising in or related to cases under title 11. *Id.* at 135. Core proceedings are those arising under title 11 or arising in cases under title 11. *See, e.g., In re Wade*, 500 B.R. 896, 907 (Bankr. W.D. Tenn. 2013); *In re Cossett*, 75 B.R. 766, 768 (Bankr. S.D. Ohio 1987); *In re Boughton*, 49 B.R. 312, 314 (Bankr. N.D. Ill. 1985); and *In re Destron, Inc.,* 59 B.R. 240, 242 (Bankr. N.D. Ill. 1986).

In *Ames*, Judge Gerber discussed the jurisdiction to hear claims against the estate:

> a proceeding "arises in" a bankruptcy case when it is not based on any right expressly created by title 11 but would have no practical existence but for the bankruptcy. Claims against the estate, even those based on state law . . . are in this category.

542 B.R. at 135 (footnotes omitted); *see also Affirmative Ins.*, 565 B.R. at 580 (Judge Sontchi cited *Ames* for the propositions that "arising in" jurisdiction includes claims against the estate, even if based on state law, and that such claims have no existence outside the bankruptcy case).

Thus, consistent with *Gardner*, *Ames*, and *Affirmative Ins.*, Plaintiffs' claims *against the bankruptcy estate* depend on the bankruptcy laws for their existence and are within the Court's

---

[8] Unless otherwise noted, all statutory citations are to 28 U.S.C.

core, "arising in" jurisdiction. *See, e.g., In re Bavelis*, 773 F.3d 148, 156-57 (6th Cir. 2014) (state law-based objection to a claim falls within the bankruptcy court's core jurisdiction under §§ 157(b)(2)(B) and (O)); *In re Bottcher*, 441 B.R. 1, 3 (Bankr. D. Mass. 2010) (debtor's state law objections to a claim "fall foursquare within the core jurisdiction of this Court over the claims allowance process"); *In re Poplar Run Five Ltd. P'ship*, 192 B.R. 848, 857 (Bankr. E.D. Va. 1995) (a proceeding involving state law claims may still be core, e.g., the allowance or disallowance of claims); 1 Collier on Bankruptcy ¶ 3.02[3][a](16th ed.) (allowance or disallowance of claims is one of the "administrative matters" unique to bankruptcy cases).

Plaintiffs may believe the Debtor Claims are not core proceedings because Plaintiffs have not filed a proof of claim. If so, they are mistaken. § 157(b)(2)(B) provides that a core proceeding includes "allowance or disallowance of claims against the estate. . ." It does not say "proofs of claim." Plaintiffs want the estate to be bound by any results obtained pursuing the Debtor Claims.[9] Their tactical decision not to file a claim does not allow them enjoy the benefits of being an estate creditor while avoiding the bankruptcy court/district court's jurisdiction. Plaintiffs cannot eat their cake and have it too.[10]

---

[9] For example, Plaintiffs stated in their Reply in Support of Motion for Abstention and Remand, doc, 17, that "the fact that the outcome of the Class Action may impact the allowance of a yet-to-be-filed proof of claim by a yet-to-be-certified class . . . ."

[10] Federal courts typically do not look favorably on creditors' attempts to assert claims against a bankruptcy estate but avoid bankruptcy court jurisdiction. *See, e.g., In the Matter of Peachtree Lane Assoc., Ltd.,* 150 F.3d 788, 799 (7th Cir. 1998) (counterclaim expressly designated "conditional" and filed only after defendant was sued by trustee did not preserve jury trial right); *Travellers Intern. AG v. Robinson*, 982 F.2d 96, 99 (3rd Cir. 1992) (filing a "contingent" proof of claim does not preserve jury trial right); *In re Hooker Investments, Inc.*, 937 F2d 833, 838-39 (2d Cir. 1991) (overruling a creditor's argument that the bar date should be extended to preserve its jury trial right in a preference action); *In re Dana Corp.*, 379 B.R. 449, 463 (S.D.N.Y. 2007) (creditor may not file a proof of claim under protest to avoid losing rights in bankruptcy); *In re Asousa Partnership*, 276 B.R. 55, 67-68 (Bankr. E.D. Pa. 2002) (submission to bankruptcy court jurisdiction by filing a proof of claim cannot be avoided by couching the proof of claim in protective language); *In re Lender's Decision, Inc.*, 1997 WL 665478, at *4-5 (N.D. Ill.) (quoting

D. The District Court's Supplemental Jurisdiction Over the San Juan Claims.

Plaintiffs also ask the Court to reconsider its ruling that it need not abstain from hearing the San Juan Claims.

1. <u>The San Juan Claims are part of the same case or controversy</u>. Plaintiffs ask the Court to make findings supporting the Court's conclusion that the San Juan Claims are within the district court's supplemental jurisdiction. To do so, the claims must be:

> so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

§ 1367(a). The Court has included findings in this opinion about the allegations in Plaintiffs' class complaint. Those allegations make clear that the San Juan Claims are part of the same case or controversy as the Debtor Claims because they "derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).[11] It is not a close call.

2. <u>Because of the district court's supplemental jurisdiction, mandatory abstention is not required</u>. The Court ruled that the district court had supplemental jurisdiction to hear the San Juan Claims, so a crucial element of mandatory abstention—no independent source of federal court jurisdiction—is not met. In support of its conclusion about supplemental jurisdiction, the Court cited *In re TXNB Internal Case*, 483 F.3d 292 (5th Cir. 2007); *Sergent v. McKinstry*, 472 B.R. 387 (E.D. Ky. 2012); *Tubbs v. Agspring Mississippi Region, L.L.C.*, 2022 WL 1164803, at *6 (W.D. La.) (citing and following *TXNB*); *Sabre Technologies, LP v. TSM Skyline Exhibits, Inc.*, 2008 WL

---

*Hooker*); *In re Chadwick Bay Hotel Assoc.*, 178 B.R. 618, 619 (Bankr. W.D.N.Y. 1995) (court deferred ruling on a creditor's motion to remand until it set a bar date, so the court would know whether the creditor wishes to participate in the estate).

[11] § 1367(a) codifies *Gibbs*. Wright & Miller, Federal Practice and Procedure § 3523, n. 43 and accompanying text.

4330897, at *3 (S.D. Tex.) (same); and *In re Fort Worth Osteopathic Hosp., Inc.*, 2008 WL 2522528, at **3-5 (N.D. Tex.) (same).

Plaintiffs assert that the Court should reconsider its ruling because *TXNB* and *Sergent* allegedly are contrary to Tenth Circuit law about when the independent source of jurisdiction must exist. Discussing *In re Midgard Corp.*, 204 B.R. 764 (10th Cir. BAP 1997), Plaintiffs argue:

> Relying on the key words of 1334(c)(2) "*could not have been commenced,*" however, the BAP looked back to the situation at the time of filing of the removed case, not at the time of removal, and determined that because the case could not have been filed in Federal court at the time it was originally filed, pre-bankruptcy, that no independent Federal jurisdiction existed. *TXNB*, in assessing the existence of jurisdiction at the time of remand, instead of at the time of the filing of the lawsuit, therefore differs materially from the 10th Circuit BAP rule in *In re Midgard*.[12]

This argument lacks merit. *Midgard* did not "look back to the situation at the time of filing of the removed case." Rather, the BAP stated:

> That federal jurisdiction does not exist absent the Debtor's bankruptcy case is not a point of contention between the parties, and no finding was made by the Bankruptcy Court on this prong of the mandatory abstention test. An independent review of the record reveals that the State Court action could not have been commenced in federal court absent jurisdiction under section 1334.
>
> Jurisdiction of the federal district courts is governed by 28 U.S.C. § 1330 *et. seq.* The State Court action could not have been commenced in a court of the United States under any applicable provision other than section 1334 . . . .

204 B.R. at 777. The BAP simply repeated or paraphrased the language in § 1334(c)(2), without addressing when a district court must have an independent source of jurisdiction. In *Midgard*, the district court never had an independent source of jurisdiction, so the removed action was always subject to §1334(c)(2) abstention. *Midgard* did not have to, and did not, address the timing issue Plaintiffs now raise. There is no Tenth Circuit law on the issue.

---

[12] Plaintiffs' reply in support of their motion for relief, doc. 43, p. 8.

Two cases following *TXNB* are relevant and disagree with Plaintiffs' interpretation of § 1334(c)(2). In *Sabre Technologies*, a state court action was filed against three defendants. When the action was filed there was no federal jurisdiction of any kind. About three months later, one of the defendants filed bankruptcy. The other two defendants then removed the state court action. The plaintiff moved to abstain and remand under § 1334(c)(2). The district court denied the motion, ruling that it had core jurisdiction over some claims and supplemental jurisdiction over the others. 2008 WL 4330897, at *3. The supplemental jurisdiction arose upon removal.

Similarly, in *Tubbs*, the state court litigation preceded the bankruptcy case by about two years. There was no federal court jurisdiction when the state court action was filed. Like the court in *Skyline*, the *Tubbs* court declined to abstain, citing its core and supplemental jurisdiction. 2022 WL 1164803, at *6.

To the extent § 1334(c)(2)'s language "with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section" is unclear about the timing of independent jurisdiction, the Court holds that it is sufficient under the subsection if supplemental jurisdiction arises upon removal. This interpretation prevents duplicative, inefficient litigation. The main benefit of supplemental jurisdiction is that it "fosters convenience and efficiency. By allowing a single federal court to resolve all related claims and proceedings, the doctrine avoids wasteful duplicative litigation." 13 Wright & Miller, Federal Practice and Procedure § 3523, n. 11 and accompanying text (3d ed.); *see also St. Paul Fire and Marine Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh*, 890 F.3d 1265, 1268 (11th Cir. 2018) ("district courts may exercise supplemental jurisdiction to consolidate closely related claims into a single proceeding in order to preserve judicial resources and avoid inconsistent judgments"); *Phillips v. City of Albuquerque*, 1998 WL 36030893, at *2 (D.N.M. ) (supplemental jurisdiction exercised to

avoid duplicate proceedings and enhance judicial efficiency); *Rodriguez v. Sokut Constr., Inc.*, 2022 WL 17547526, at *8 (E.D. Cal.) (to avoid needless expenditure of judicial resources and the potential for inconsistent judgments due to parallel proceedings); *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d. 540, 552 (S.D.N.Y. 2017) (fundamentally unfair to require the parties to undergo the expense of a duplicative trial); *White v. Washington Cnty., Tenn.*, 85 F. Supp. 3d 955, 958 (E.D. Tenn. 2015) (supplemental jurisdiction exercised to avoid duplication and waste judicial and the parties' resources).

The laudable goals of supplemental jurisdiction would be hamstrung by the interpretation Plaintiffs advocate. If the district court cannot exercise supplemental jurisdiction over removed actions that were commenced before the bankruptcy case—which is typical—the result would be needless duplication of effort, waste of resources, and the possibility of inconsistent results. The Court concludes that if the Tenth Circuit were to address the issue, it would hold that § 1334(c)(2) does not mandate abstention for claims over which the district court obtains supplemental jurisdiction upon removal.

3. <u>Alternatively, if the proceeding includes core and noncore claims, § 1334(c)(2) does not require abstention</u>. Plaintiffs' motion to reconsider this issue must be denied for another reason as well: § 1334(c)(2) does not require abstention if the proceeding has multiple state law claims, at least one of which is core.

Section 1334(c)(2) provides:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

The subsection is easy to construe and apply when the "proceeding" for which abstention is sought contains a single state law claim.[13] Because the subsection refers to "a State law claim" rather than "State law claims," however, it is more difficult to apply when the challenged proceeding contains multiple state law claims.

To construe and apply the subsection here, the Court first concludes that the term "proceeding" refers to an entire adversary proceeding, not just a claim in the proceeding. The subsection addresses a "proceeding based on a State law claim. . . ." If "proceeding" meant "claim," then the subsection would apply to a "claim" based on a "claim." That is a weak interpretation of the text. Furthermore, elsewhere in title 28 and the Bankruptcy Rules, "proceeding" means an adversary proceeding or contested matter, not an individual claim therein. *See, e.g.,* §§ 157 (proceedings and core proceedings) and 1334 (civil proceedings, particular proceedings, and proceedings), and Bankruptcy Rule 7001 (adversary proceedings). Nowhere is proceeding used as a synonym for claim.

Next, the Court concludes that, even though Congress used the singular form of "State law claim," it intended the subsection to apply when a proceeding has multiple state law claims. Otherwise, the subsection would require abstention when a proceeding has one state law claim that is noncore, but not when it has multiple noncore state law claims. As a literal reading leads to an absurd result,[14] the Court construes the language as requiring abstention if a proceeding has one

---

[13] The subsection refers to "a State law claim or State law cause of action." As claim and cause of action mean the same thing, the Court will use the term "claim" to mean both.

[14] *See U.S. v. Ron Pair Enter., Inc.*, 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters'"); *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1093 n.2 (10th Cir. 2005) (citing the quoted language from *Ron Pair*); Scalia & Garner, Reading Law, canon 36, p. 234 ("A provision may be either disregarded or judicially corrected as an error (when the correction is textually simple) if failing to do so would result in a disposition that no reasonable person could approve.").

or more state law claims, none of which are core, and the other elements of mandatory abstention are met.

Finally, the Court construes the subsection to require abstention only if none of the multiple state law claims are core. If a proceeding has core and noncore claims, § 1334(c)(2) does not require abstention because the claims are not all "related to a case under title 11 but not arising under title 11 or arising in a case under title 11."

Two cases agree with this interpretation. In *In re Milford Group, Inc.*, 164 B.R. 892 (Bankr. M.D. Pa. 1993), defendants to an adversary proceeding moved for mandatory abstention. The proceeding had nine counts. The court first ruled that five of the counts were core, then held:

> This Court has determined that some of the claims within the proceeding do arise under Title 11 and are therefore core matters. Consequently, the Court finds that the request for mandatory abstention must be denied.

*Id.* at 897.

In *In re HRNC Dissolution Co.*, 2015 WL 5299468 (Bankr. E.D. Ky.), a party to a removed proceeding moved for mandatory abstention. The bankruptcy judge first observed:

> where a party seeks complete abstention in an action, mandatory abstention is inappropriate so long as some claims within an action are core. *Milford Grp., Inc. v. Ne Bank of Pa. (In re Milford Group., Inc.)*, 164 B.R. 892, 897 (Bankr. M.D. Pa. 1993).

*Id.* at *5. After finding that five of the seven claims in the proceeding before her were core, the court ruled:

> the Court is not required to determine whether the remaining claims are core in deciding Plaintiff's motion for mandatory abstention. *See Milford Grp.,* 164 B.R. at 897. Abstaining in the two remaining counts, which are inextricably intertwined with and seek the same relief as the other five, would be wholly impracticable.

*Id.* at *7. The bankruptcy court was affirmed by the Sixth Circuit BAP in *In HRNC Dissolution Co.*, 585 B.R. 837, 844-45 (6th Cir. BAP 2017). The BAP held:

Case 22-01018-t    Doc 48    Filed 02/02/23    Entered 02/02/23 17:07:34 Page 13 of 15

In its decision, the Bankruptcy Court relied heavily—and correctly—on *Milford Group, Inc. v. Ne. Bank of Pa. (In re Milford Group, Inc.)*, 164 B.R. 892 (Bankr. M.D. Pa. 1993). That case involved, in part, consideration of mandatory abstention under § 1334(c). *Id.* at 897. In *Milford*, the court determined that five of the nine claims at issue were core matters either arising in or under the Bankruptcy Code. *Id.* The court then stated that because "some of the claims within the proceeding do arise under Title 11 and are therefore core matters," mandatory abstention was not appropriate. *Id.* Thus, per *Milford*, a "proceeding" is an entire case, not the discreet claims or causes pursued within that case. *See id.*

The Bankruptcy Court adopted the *Milford* definition of "proceeding," determining that the word meant the whole adversary proceeding and not the individual, discreet claims raised therein.

585 B.R. at 845. Later the Sixth Circuit BAP opined:

Allowing a court to hear two arguably non-core claims when it already is hearing five other core claims that are based on the same facts and involve the same parties would not over-extend a court or its jurisdiction. Such a court already is administering an entire adversary proceeding, with all of the work involved and legal implication that accompany those efforts.

Instead, sending two claims to a court that cannot, under any circumstance, adjudicate the other five related claims, poses a greater risk to important policy concerns. In that situation, there is a risk that the two venues would consider the same facts and evidence but reach different findings and holdings. This invites confusion and makes it difficult for the parties to move forward with certainty. Additionally, there is no judicial economy in splitting claims between two courts when one of those courts clearly has exclusive jurisdiction to address the bulk of the claims. Dividing the case would require duplicative discovery efforts and double the litigation required to resolve the dispute.

585 B.R. at 846-47. The Sixth Circuit affirmed, albeit on the alternative ground that all the claims were core. 761 Fed. Appx. 553 (6th Cir. 2019) (unpublished).

*HRNC's*, *Milford's*, and the Court's interpretation of § 1334(c)(2) avoids an absurd result, dovetails with the supplemental jurisdiction cases discussed above, and furthers the federal policy of avoiding duplicative, inefficient litigation. Under the interpretation, Plaintiffs' motion for mandatory abstention from hearing the San Juan Claims must be denied.

4. <u>The bankruptcy court and supplemental jurisdiction</u>. Plaintiffs ask that the Court either "(1) amend the opinion to sidestep the issue of whether this court has supplemental jurisdiction, if it is not necessary to this Court's holding, as Judge Jacobvitz did in Otero County, or (2) further outline in the Opinion why its ruling, which appears to otherwise adopt *TXNB*, is not inconsistent with the acknowledgement, within *TXNB* itself, that bankruptcy courts lack supplemental jurisdiction." The Court did not rule that it had supplemental jurisdiction over the San Juan Claims; it ruled that the *district court* had supplemental jurisdiction over the claims. Whether bankruptcy courts have supplemental jurisdiction was not raised or argued. The Court did not address the question, and does not address it now.

## Conclusion

Plaintiffs' motion to reconsider is not well taken and will be denied, except, however, that additional facts upon which the Court relies for its ruling about the district court's supplemental jurisdiction have been set out above. A separate order will be entered.

_/s/ David T. Thuma_
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: February 2, 2023
Copies to: counsel of record